

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 3 2017

CLERK, U.S. DISTRICT COURT
_____
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| SID EARL POTEET, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. § 4:16-CV-161-A |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Sid Earl Poteet ("Poteet") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claim for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In April 2013,

Poteet applied for DIB benefits alleging that he became disabled on April 6, 2012. (Transcript

("Tr.") 10, 111-15.) His application was denied initially and on reconsideration. (Tr. 10, 39-49,

51-62.) The ALJ held a hearing on June 9, 2014 and issued a decision on September 26, 2014

1

that Poteet was not disabled.  (Tr. 10-18, 29-38.)  Poteet filed a written request for review of the

ALJ's decision, and the Appeals Council denied the request on January 16, 2016, leaving the

ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-6, 23-27.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous

regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically

determinable physical or mental impairment lasting at least twelve months that prevents the

claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A);

*McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is

disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §

404.1520.  First, the claimant must not be presently working at any substantial gainful activity.

Substantial gainful activity is defined as work activity involving the use of significant physical or

mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an

impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v.*

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir.

2000).  Third, disability will be found if the impairment or combination of impairments meets or

equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt.

P, App. 1.  20 C.F.R. §§ 404.1520(d).  Fourth, if disability cannot be found on the basis of the

claimant's medical status alone, the impairment or impairments must prevent the claimant from

returning to his past relevant work.  *Id.* § 404.1520(e).  And fifth, the impairment must prevent

the claimant from doing any work, considering the claimant's residual functional capacity, age,

education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

## III.    ISSUES

In his brief, Poteet presents the following issues:

1. Whether the ALJ erred at Step Five because the ALJ never identified Poteet's skills which would transfer to other work and there is no evidence to support the ALJ's finding that the single job of general incinerator plant supervisor existed in significant numbers in the national economy; and

2. Whether the ALJ erred in finding at Step Two that Poteet's torn left rotator cuff with degenerative changes was a "severe" impairment but then failed to account for it in the residual functional capacity ("RFC") determination; and

3. Whether the ALJ erred by failing to take into consideration Poteet's excellent work history in his credibility determination.

(Plaintiff's Brief ("Pl.'s Br.") at 3, 6-15.)

## III.    ALJ DECISION

In his September 26, 2014 decision, the ALJ found that Poteet met the insured status requirements of the SSA "at least through the date of [the] decision" and had not engaged in any substantial gainful activity since April 6, 2012, Poteet's alleged onset date of disability. (Tr. 17.) The ALJ further found that Poteet suffered from the following severe impairments: (1) torn left rotator cuff with degenerative changes in the joint; (2) grade `1 l5/s1` spondylolisthesis and degenerative changes at the `l3-s1` level; (3) residual ventral hernia status-post abdominal reconstruction; (3) hypertension; and (4) obesity. (Tr. 17; *see* Tr. 11.) The ALJ stated that Poteet also had "obstructive sleep apnea, vertigo, diminished right ear hearing, and status-post extracted cataract and lens implant in the left eye" but that he did not have an impairment of combination of impairments that met or equaled the severity of any impairments in the Listing. Tr. at 17.) As to Poteet's RFC, the ALJ stated, "[Poteet] retains the exertional capacity for the

4

sustained performance of a full range of sedentary work activity. There are no other physical limitations or restrictions, special sense limitations or work-related mental limitations." (Tr. 18; *see* Tr. 15.)

The ALJ next found that Poteet was unable to perform his past relevant work as a wastewater treatment plant manager or commissioner of public works but that he had acquired work skills from such past relevant work. (Tr. 18.) Specifically, the ALJ stated, "As of April 6, 2012, claimant was 61 years old and he has remained within the closely [approaching] retirement . . . age category; he has one year of college and relevant vocational training; and he has acquired work skills that are readily transferable to a significant number of jobs, including incinerator plant general supervisor, within his exertional capacity. (Tr. 18 (internal citations omitted).) Then, the ALJ opined, "In consideration of claimant's residual functional capacity and relevant vocational characteristics, the framework of the Medical-Vocational Guidelines, and the vocational expert [("VE")] testimony, there are jobs, including incinerator pant [sic] general supervisor, that exist in significant numbers in the national economy that claimant can perform." (Tr. 18; *see* Tr. 16-17.) Consequently, the ALJ found that Poteet was not disabled. The Appeals Council affirmed the ALJ's decision on January 16, 2016, and Poteet appealed the decision to this Court.

## IV. DISCUSSION

### A. <u>Step Five Issues</u>

#### 1. Failure to Identify Transferable Skills

The first issue is whether the ALJ erred at Step Five in failing to identify any particular

skills which would transfer to a significant number of jobs that existed within the national economy. (Pl.'s Br. at 6.) Specifically, Poteet states:

> Where, as here, the ALJ's step 5 denial is premised upon a claimant's ability to use acquired work skills in a new occupation, the Agency must obtain certain evidence and engage in a very specific skills transferability analysis. SSR 82-41. . . .

> For those individuals, like Plaintiff, who are 60 years of age and older ("closely approaching retirement age"), the Agency has a still greater burden of proving that there would be very little if any vocational adjustment in terms [of] tools, work processes, work settings, or the industry between Plaintiff's prior work and the other occupations identified by the VE. Therefore, the Agency must show that the individual (1) has acquired specific work skills that are "readily transferable to a significant range of semi-skilled or skilled work" and (2) that there would be very little, if any, vocational adjustment in terms [of] tools, work processes, work settings, or the industry between the individual's prior work and the other occupations identified by the VE. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(c); 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(f); 20 C.F.R. §§ 404.1568(d)(4); see also SSR 82-41.

> Here, the vocational expert testified that Mr. Poteet would have transferable skills from his past work as a wastewater plant supervisor and commissioner of public works to a single job: the position of incinerator plant general supervisor. Tr. 33-34. He further testified that these skills were "readily transferable . . . it's at the closest of match, meaning it shares the same work fields and same MPSMS." Tr. 34. However, at no point did he identify what those skills were. While Plaintiff acknowledges the vocational expert suggests that Mr. Poteet has skills which would transfer with very little adjustment, Agency policy is clear that two steps are required: "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State Agency's determination or ALJ's decision." SSR 82-41. (Emphasis added.) The first part of this analysis simply did not occur here.

(Pl.'s Br. at 7-8.[1])

---

[1] The Court notes that Poteet cites to rules in section 202.00 of 20 C.F.R. Pt. 404, Subpt. P, App. 2, which apply to maximum sustained work capability limited to light work. Because the ALJ limited Poteet to sedentary work, it appears that Poteet should have been citing to rules in section 201.00 of 20 C.F.R. Pt. 404, Subpt. P, App. 2. Because such error does not change the result, the Court will not address it further.

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton*, 209 F.3d at 453. "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453. In this case, the ALJ supported his determination at Step 5 by relying upon the testimony of the VE.

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. § 404.1565. When the transferability of skills is at issue, the ALJ must make certain findings of fact and include them in his decision. SSR 82-41, 1982 WL 31389, at *7. After identifying the skills a claimant acquired through past relevant work, the ALJ must make a determination regarding whether or not those skills are transferable to other occupations. 20 C.F.R. § 404.1568(d). Transferability applies only to situations "when the skilled or semi-skilled work

activities [claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1); *see* Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *2 (S.S.A. 1982). The regulations state that transferability is most probable for jobs requiring the same or a lesser degree of skill, or jobs which use similar tools, machines, materials, and processes. *See* 20 C.F.R. § 404.1568(d)(2). Transferability thus depends upon the similarity of the "occupationally significant work activities" required by various jobs. 20 C.F.R. § 404.1568(d)(1). However, exact or complete similarity between jobs is not required for a finding of transferability. *See* § 404.1568(d)(3). Only particularly specialized skills or those acquired in "an isolated vocational setting (like many jobs in mining, agriculture, or fishing)" are "not readily usable in other industries, jobs, and work settings" and, thus, are not transferable. *Id.* Because the transferability of a skill is a determination ultimately made by the ALJ, the vocational expert's testimony must be specific enough to provide the ALJ with enough information to make an informed decision. *See Muehling v. Colvin*, No. 2:12-CV-013, 2013 WL 1194078, at *4 (N.D. Tex. Mar. 6, 2013).

During the hearing before the ALJ, the VE testified as follows:

[ALJ:] Ms. Aliff, have you reviewed this vocational report submitted by Mr. Poteet?

[VE:] Yes, I have.

[ALJ:] How would you describe the exertion level and the skill level of his past relevant work?

[VE:] Your Honor, I will indicate that there are no completely—complete matches with the DOT with his work. I show a wastewater treatment plant supervisor at light, with an SVP of 7, and that would be for his work with The Egyptian.

And then I selected commissioner public works, which the DOT defines as sedentary, with an SVP of 8; however, I will note that the claimant described all of his work in the medium exertional level.

[ALJ:] Well, if these jobs were performed at the medium level, this direction of public works, and program manager, in other words, these jobs directing essentially government work.

[VE:] Yes.

[ALJ:] If he performed it at the medium level, does he have skills that would be transferable to the sedentary level?

[VE:] Let me check that, Your Honor. My program—my program just crashed when I was running it, so give me one second.

One job comes up, Your Honor. It's the incinerator plant general supervisor.

[ALJ:] What is the job?

[VE:] It's the incinerator plant general supervisor, and it is listed at sedentary with an SVP of 6. Would you like the skills, Your Honor, or would you like the numbers first?

[ALJ:] I would like to know if the skills that he has as public works director would be readily transferable to incinerator plant supervisor.

[VE:] It is readily transferable, Your Honor. It's at the closest level of match, meaning it shares the same work fields and the same MPSMS.

[ALJ:] So then, I guess, Ms. Merritt, the question would turn to whether or not Mr. Poteet can perform a full range of sedentary work.

ATTY: Yes sir.

(Tr. 33-34.)

As to the issue of transferability, the ALJ, in his decision, stated:

> As noted, claimant's past relevant work is comprised of highly skilled positions. For a worker over age 55 and capable of only sedentary duties, 20 CFR 404.1568(d)(4) specifies that his skills are readily transferable to equally, or less complex, sedentary exertion jobs if the potentially alternative position(s) are so similar to his past relevant work that he would need to make with very little, if any, adjustment in terms of the tools, work processes, work settings, or the industry. Ms. Aliff testified that claimant's skills closely match the requirements of incinerator plant general supervisor, describe[d] at identifying Dictionary of Occupational Titles code 184.167-046 as a sedentary, skilled job with a specific vocational preparation rating of six, indicating a less complex, but skilled, position job than those in claimant's past relevant work. Furthermore, the vocational expert testified that the proposed alternative occupation requires only occasionally reaching, within the limits suggested by the DDS analysts. . . .

> . . . .

> 9. As of April 06, 2012, claimant was 61 years old and he has remained within the closely [approaching] retirement . . . age category; he has one year of college and relevant vocational training (see exhibit 2e); and he has acquired work skills that are readily transferable to a significant number of jobs, including incinerator plant general supervisor, within his exertional capacity.

(Tr. 16, 18.)

Contrary to Poteet's arguments, the Court concludes that, based on the testimony of the VE at the hearing, the ALJ did have substantial evidence to support his decision at Step Five that Poteet did have particular skills from his past relevant work that were transferable. (Tr. 16-18.) In this case, it is clear that the ALJ thoroughly questioned the VE at the hearing regarding transferability of work skills. (Tr. 34.) In addition, as required by SSR 82-41, the ALJ specifically stated that the skills he had obtained in his past relevant work as a public works director would be readily transferable to an incinerator plant supervisor. (Tr. 34.) The ALJ opined that the skills listed in his past relevant work has the same Work Fields and Materials,

Product, Subject Matter & Services (MPSMS) codes as the incinerator plant general supervisor job. (Tr. 34.) While the ALJ did not specifically set forth the skills, such skills are identifiable by viewing the MPSMS codes as noted by Defendant in his brief. Thus, the ALJ clearly identified that Poteet's skills that he obtained from his past relevant work were transferable to an incinerator plant supervisor. Because the ALJ complied with applicable law regarding transferability of work skills, remand is not required on this basis.

### 2. Job of Plant General Supervisor

Poteet next claims that the ALJ erred by failing to testify "to whether job of incinerator plant general supervisor existed in significant numbers in the national or regional economy and provided no job numbers for this position." (Pl.'s Br. at 10.) In addition, Poteet argues the ALJ erred "because the single occupation of incinerator plant general supervisor would be insufficient to show a significant 'range' of work." In other words, Poteet claims that a lone identified occupation of incinerator plant general supervisor is not a "significant range." (Pl.'s Br. at 11.)

The first issue is whether the ALJ erred in finding at Step Five that the job of incinerator plant general supervisor existed in significant numbers in the national economy when the VE provided no job numbers for this position as to how many positions were actually available. Under 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566, work exists in significant numbers in the national economy if it exists in significant numbers in either the region where the claimant lives or in several other regions of the country. For substantial evidence to support the ALJ's determination that work exists in significant numbers in the national economy that Poteet can perform, there must be evidence of how many positions of the incinerator plant general

supervisor job exist in the national economy.[2]  While the "Fifth Circuit has offered no test or 'magic number' for determining a 'significant number,'" in this case, there is no evidence at all of the number of positions available.  *Mericle v. Sec'y of Health & Human Servs.*, 892 F. Supp. 843, 847 (E.D. Tex. 1995) (quoting *Denais v. Sec'y of Health & Human Servs.*, 820 F. Supp. 278, 282 (W.D. La. 1993)).  Neither the VE during her testimony before the ALJ nor the ALJ in his decision specified the number of incinerator plant general supervisor jobs that were available. Thus, there is no evidence that the job of incinerator plant general supervisor work exists in significant numbers in the national economy.  Consequently, remand is required on this issue.

---

[2] The Court notes that Defendant argues that the "fact that the ALJ continued [after finding Poteet was disabled under section 201.07 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P ("the Grids")] and found that Plaintiff could also perform the alternate job of an incinerator plant general supervisor does not negate the fact that the ALJ properly found Plaintiff not disabled under the Grids."  (Defendant's Brief ("Def.'s Br.") at 10.) Defendant claims that "[w]here the characteristics of the claimant correspond to the criteria of one of the grid rules, 'the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform.'"  (Def.'s Br. at 10.)

The Court finds Defendant's argument unpersuasive as it is clear from the language used by the ALJ in his decision that he did not rely solely on the Grids at Step Five to find that Poteet was not disabled.  Instead, the ALJ began his discussion at Step Five by setting forth the law regarding the Grids and then discussing Poteet's past relevant work and transferability of his skills.  (Tr. 16-17.)  Next the ALJ stated, **"[a]s established by the vocational expert, I find that there is a job existing in significant [numbers in the] national economy claimant can perform and, therefore, I have decided he is not disabled."**  (Tr. 17 (emphasis added).)  Based upon this language used by the ALJ, it is clear that the ALJ was making his determination at Step 5 based on the testimony of the VE and not the Grids.

Furthermore, in the Findings section of his opinion, the ALJ stated, "In consideration of claimant's residual functional capacity and relevant vocational characteristics, the framework of the Medical-Vocational Guidelines, and the vocational expert testimony, there are jobs, including incinerator p[l]ant general supervisor, within his exertional capacity."  (Tr. 18.)  While in this sentence, the ALJ does refer to the "framework of the Grids," the ALJ also refers to the testimony of the VE.  If the ALJ was relying solely on the Grids at Step 5, he would not have needed to rely on the VE's testimony about other jobs that existed in the national economy.  *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (stating that if impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's RFC, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that claimant can perform).  Thus, based on the wording used by the ALJ, it is clear that the ALJ relied on the VE testimony at Step 5 in finding that Poteet was not disabled.

As to Poteet's argument that the ALJ erred in only identifying one job, incinerator plant general supervisor that Poteet could perform, the Court finds that this is not error because one job is enough as long as it exists in significant numbers in the national or regional economy. *See*, *e.g.*, *Hallcy v. Astrue*, No. 5:09-CV-135-BG, 2010 WL 2605214, at *3 (N.D. Tex. May 27, 2010) ("[E]ven if the court were to assume, *arguendo*, that the ALJ's determination that [the claimant] could perform her past work as a cashier was reached in error, any error must be considered harmless because the ALJ determined that she could perform another job she worked at in the past."); *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. Apr. 8, 2009) ("The Commissioner's burden at Step 5 of the sequential evaluation process . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform.")

### B. **Step Two and RFC Determination**

The next issue is whether the ALJ erred in finding at Step Two that Poteet's torn left rotator cuff with degenerative changes was a "severe" impairment but then failed to account for it in the RFC determination. Poteet claims that, "[d]espite finding at step 2 of the sequential evaluation that Plaintiff's torn left rotator cuff with degenerative changes is a 'severe impairment,' Tr. 17, the ALJ included no work-related limitations regarding this impairment in his RFC for a full range of sedentary work." (Pl.'s Br. at 13.)

Generally, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC. Under certain circumstances, the ALJ could find that an impairment is severe at Step Two and then not include

13

any limitations in the RFC determination regarding such impairment because the evidence does not support such limitations. *See, e.g., Kozlowski v. Colvin*, No. 4:13-CV-020-A, 2014 WL 948653, at *5-6 (N.D. Tex. Mar. 11, 2014) (finding that the ALJ did not err in finding that the claimant's carpal tunnel syndrome was severe at Step Two but not including any specific limitations regarding such impairment in the RFC determination). Moreover, "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec'y. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). In other words, the consideration of whether a claimant's impairments are severe at step two is a different inquiry than an ALJ's assessment of the claimant's RFC. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010) ("[T]he ALJ's step two determination that [claimant] had a severe combination of impairments including illiteracy and innumeracy is not necessarily inconsistent with his RFC determination that [claimant] had no communicative limitations."); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits.").

14

Based upon a thorough review of the evidence in the record, the ALJ found that Poteet had several severe impairments, including, as noted by Poteet, a torn left rotator cuff with degenerative changes. (Tr. 11, 17.) Based upon these severe impairments and the evidence in the record, the ALJ determined that Poteet had the RFC to perform sedentary work, "the least strenuous of the several work activity levels."[3]  In making his RFC determination, the ALJ reviewed the medical evidence in the record and Poteet's own complaints regarding, *inter alia*, his left shoulder pain, arm, and hand issues. (Tr. 11-18.) While Poteet argues that the ALJ erred in failing to include a limitation in the RFC determination to account for such pain and issues, it is clear that the ALJ limited Poteet to **sedentary** work to, *inter alia*, account for such issues. (*Id.*) As noted by Defendant, "[t]his is a significant reduction from the work Plaintiff previously performed at medium level (frequently lifting 50 pounds or more) just prior to his alleged disability onset date. (Defendant's Brief ("Def.'s Br.") at 14.) Because the ALJ did consider Poteet's severe impairment of a torn left rotator cuff with degenerative changes in formulating the RFC, there is no error and remand is not required on this issue.

Poteet also argues that the ALJ erred in failing to assign any weight to the opinion of William Bosworth, M.D. ("Dr. Bosworth"), a consultative examiner. (Pl.'s Br. at 13-14; *see* Tr. 396-99.) Poteet claims that every medical opinion, regardless of its source, must be evaluated.

---

[3] Pursuant to the regulations, sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a).

(Pl.'s Br. at 13.) Poteet states that, according to 42 USC § 405(b)(1) and 20 CFR § 404.1453(a), an "ALJ's written decision must include a discussion of all the evidence and must clearly set forth the reasons upon which it is based." (Pl.'s Br. at 13.)[4]

While an ALJ is to consider all medical opinions in determining the disability status of a claimant (see 20 C.F.R. §§ 404.1527(b)), the ALJ is not required to give controlling weight to medical opinions of non-treating sources. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that ALJ is not required to give the opinion of, *inter alia*, a consultative examiner controlling weight). The ALJ must only consider Dr. Bosworth's opinions as evidence to be weighed. *Id.* Accordingly, Dr. Bosworth's medical opinions do not have controlling weight over Poteet's case, and the ALJ had the authority to reject Dr. Bosworth's medical opinions insofar as there is contradictory evidence in the record.

As to Dr. Bosworth's opinions, the ALJ stated:

> In the absence of other records, Dr. William Bosworth conducted as [sic] consultative physical exam June 04, 2013 and claimant reported the shoulder and hernia problems, which still required an abdominal binder at times (per testimony, claimant still uses the binder), as well as a history of back pain without injury or radicular pains (exhibit 8f)[.] He added X-rays have "apparently" shown spondylolisthesis but he did not take "particular" medication, an eight-year history of vertigo then controlled with Betaserc so that he had infrequent spells no more than once every three weeks or so, and low-grade hypertension that did not require medication and to which he attributed no symptoms. Claimant then acknowledged that he did not need an assistive device despite an occasional click

---

[4] Poteet also seems to be arguing that the ALJ erred in formulating his RFC determination because there is other objective and subjective evidence in the record showing Poteet "has significant limitations from his left shoulder condition." (Pl.'s Br. at 13-14.) Even assuming this is true, there is also substantial evidence supporting the ALJ's RFC determination. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Thus, remand is not required.

in his left knee, he could walk three blocks and stand for 60 minutes, and he did housework, prepared meals, shop, did laundry and drove.

Claimant reported he did take one daily meloxicam, a non-steroidal anti-inflammatory, and hydrocodone as needed. At 69.75" and 243#, his approximate body mass index was 48, indicative of level III obesity, and his blood pressure was moderately [sic], at 173/83. However, his pulse and respiration rates were normal and, upon examination, the physician found to [sic] cardiovascular or respiratory abnormalities except for an absent left ankle pulse. Claimant's uncorrected vision was 20/25 OD and 20/30 OS, and he spoke, heard, and carried on a normal conversation without difficulty. The bilateral straight leg-raising tests were normal and claimant had normal gait and station, his heel and toe and tandem walks were performed reasonably well, he had intact fine and dexterous finger movement, and his cranial nerve, cardiovascular and respiratory systems were intact. His [sic] had full upper and lower extremity strength, including bilateral grip strength, without atrophy, and all spinal and peripheral joint ranges of motion were normal except for reduced bilateral shoulder ranges of motion and less affected right elbow movements (he had reported a distant right elbow procedure). The radiologist stated the X-rays revealed degenerative changes in at [sic] the 13-s1 level and grade 1 15/s1 spondylolisthesis.

(Tr. 12; *see* Tr. 396-99.)

While an ALJ is to consider all medical opinions in determining the disability status of a claimant (see 20 C.F.R. §§ 404.1527(b), 416.927(b)), the ALJ is not required to give controlling weight to medical opinions of non-treating sources. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that an ALJ is not required to give the opinion of, *inter alia*, a consultative examiner controlling weight). In other words, the ALJ must only consider Dr. Bosworth's opinions as evidence to be weighed. *Id.* Accordingly, his medical opinions do not have controlling weight over Poteet's case, and the ALJ had the authority to reject Dr. Bosworth's medical opinions insofar as there is contradictory evidence in the record.

While the ALJ may have erred in not setting forth the weight he was giving to Dr. Bosworth's opinions, any error in this regard is harmless as it is obvious from a reading of the

ALJ's decision that the ALJ properly considered Dr. Bosworth's opinions. *See, e.g., Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error). In fact, some of Dr. Bosworth's opinions even appear to support the ALJ's RFC findings that Poteet could perform sedentary work. Thus, remand is not required.

In addition, Poteet argues that, "because the ALJ improperly omitted any discussion of Plaintiff's arm limitations from the RFC, he did not consult the vocational expert about this limitation. (Pl.'s Br. at 14.) "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion.

In this case, the ALJ included all limitations that he found in the RFC determination, which was being able to perform sedentary work, in the hypothetical question to the VE. (Tr. 33-34; *see* Tr. 15, 18.) The VE then testified that an individual with Poteet's past relevant work

experience had skills that would be transferable to the sedentary level and, specifically, to the job of an incinerator plant general supervisor. (Tr. 33-34.) The ALJ relied on the VE's testimony that specifically related to the functional limitations that the ALJ actually found in his RFC assessment. The Court finds that the ALJ appropriately incorporated those limitations he found supported by the record into his RFC determination and did not err by failing to consider any additional limitations that Plaintiff alleges were imposed by his left rotator cuff impairment.

Furthermore, the ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris*, 864 F.2d at 336. The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (no reversible error if the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations.) Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Consequently, remand is not required on this issue.

## C. Work History

Poteet also claims that the ALJ erred by failing to take into account his excellent work history. (Pl.'s Br. at 14.) In support of this argument, Poteet states:

> Plaintiff acknowledges that courts are generally reluctant to overrule the credibility findings of an ALJ, understands the reasons why, and generally agrees with those reasons. But the deference due to such findings does not make the topic sacrosanct; evaluation of credibility under the Act is not an amorphous concept, but rather must be made in accordance with the regulatory requirements. Plaintiff points out here only one additional fact with respect to that finding: his exemplary work history.
>
> Plaintiff accrued covered earnings for 168 out of a possible 172 quarters prior to his alleged disability onset stretching back to 1969, including 25 years of uninterrupted years of earnings prior to 2012. Tr. 116-117. Mr. Poteet earned over 100,000 dollars in each of the three years prior to his disability onset date. Tr. 117. Pursuant to SSRs 96-8p and 96-7p, the ALJ was required to consider Plaintiff's strong work history as part of his credibility analysis, but failed to do so. Case law has long recognized the regulatory and rational basis for this requirement; the courts that have so held have reasoned that it is unlikely someone, such as Mr. Poteet, would trade their productive, and lucrative, work career for the far less lucrative "career" of receiving disability benefits. *See Taybron v. Harris*, 667 F.2d 412 (3d Cir. 1981); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).
>
> To be clear, Plaintiff is not suggesting that the credibility factor of work history carries more weight than the other factors, or that her [sic] stellar work history entitled her [sic] to enhanced credibility; Plaintiff simply states that it cannot be reasonably denied that the Agency's rules require (1) consideration of a claimant's historical willingness to work in the credibility finding; and (2) that the ALJ in this case did not consider it. . . . Plaintiff's lengthy and consistent work history is a factor that lends to his credibility, but the ALJ failed to even acknowledge this fact. This is error.

(Pl.'s Br. at 14-15.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the

claimant's symptoms such as pain. 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. March 16, 2016). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2. A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529(a).

As to Poteet's credibility, the ALJ, *inter alia*, stated:

> When assessing impairment severity and secondary functional limitations, I evaluated claimant's testimony and other statements regarding daily activities, restrictions and symptoms, but I considered several factors and they are not controlling. In addition to the testimony and objective medical facts/opinions, I considered other relevant factors, including but not limited to (1) claimant's daily activities; (2) the location, duration, frequency and intensity of his subjective complaints; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side-effects of medication (he has reported that [L]isinopril, an anti-hyprtenstive medication, causes coughing but he has otherwise denied adverse side effects, exhibits 4e, 6-7e & 10e); (5) the prescribed treatment regimen; and (6) any other palliative measures he may use. . . .
>
> . . . .
>
> 6. Based on the evidence in its entirety, claimant's testimony and other statements regarding his subjective complaints and functional limitations were generally credible, but his testimony, the objective medical evidence and reasonable inferences therefrom does not support the conclusion that he is incapable of performing any level of sustained work activity.

(Tr. 13, 17 (footnote omitted).)

Contrary to Poteet's allegations, the ALJ did consider Poteet's work history. To begin with, the ALJ was aware of Poteet's prior work history and income levels for at least the past 15 years as such information was listed in several reports that the ALJ specifically considered. (Tr. 16; *see*, *e.g.*, Tr. 125-147.) In addition, as discussed above, the ALJ was aware of Poteet's vocational history in determining that he had one year of college and relevant vocational training and had acquired work skill that were readily transferable to a significant number of jobs in the national economy. (Tr. 16-18.) Moreover, as stated by Poteet, work history is one of several factors for the ALJ to consider and any error by the ALJ in fully considering Poteet's strong work history is harmless as substantial evidence supports the ALJ's credibility determination. Thus, remand is not required on this basis.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only

make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 17, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 3, 2017.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

23